**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TERRY KATHLEEN WINN,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>_____ ) | **CIVIL ACTION**<br><br>**No. 15-1266-JWL** |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for DIB, alleging disability beginning January 1, 2012. (R. 148, 310). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff claims the Administrative Law Judge (ALJ) erred in considering the opinions of Dr. Allen, the psychologist who examined her at the request of the agency, and of Dr. Seery, her personal physician.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's evaluation of Dr. Allen's or Dr. Seery's opinions.

## II.  Discussion

The court was quite confused by the structure of Plaintiff's Brief.  On the first page of her Brief she provided a section titled "Issues Presented" and stated but one issue-- "whether substantial evidence supports the ALJ's RFC assessment when the ALJ found that [Ms.] Winn had a moderate limitation in social functioning but he [sic] failed to account for that finding in the RFC."  (Pl. Brief 1).  She said nothing more regarding social functioning in her Brief or in her Reply Brief.  As suggested by Plaintiff's presentation of the issue, the ALJ found that Plaintiff "has no more than a moderate limitation in social functioning due to her mental impairments."  (R. 154).  However, by failing to develop an argument in that regard she has waived consideration of any error in the ALJ's assessment of RFC limitations relating to social functioning.  Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived).

Plaintiff entitled the "Argument" section of her Brief "The ALJ Decision Is Not Supported By Substantial Evidence" (Pl. Brief 9), and she argued both that the ALJ was not justified in according little weight to Dr. Allen's opinion (Pl. Brief 14) and that giving "substantial weight to Dr. Allen's opinion would support substantial weight to Dr. Seery's opinions."  (Pl. Br. 17).  In response the Commissioner argues that the ALJ appropriately evaluated Dr. Allen's opinion, that her evaluation was reasonable and supported by the

4

evidence, and that Plaintiff's argument regarding Dr. Seery's opinion is undeveloped and therefore waived.

### A.     Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources[1] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2015). A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

5

sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2015) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is

also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B. The ALJ's Evaluation

Dr. Seery was Plaintiff's primary care physician, and he provided three medical source statements providing opinions regarding Plaintiff's physical and mental

capabilities and limitations. (R. 675-81, 742-44). Two of Dr. Seery's medical source statements relate to Plaintiff's mental condition, a "Medical Source Assessment (Mental)" dated August 26, 2014 (R. 675-77), and a document titled "Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue, and Hysterical Paralysis" dated August 25, 2014.[2] (R. 678-81). Dr. Seery also provided a "Physical Medical Source Statement" which was dated August 26, 2014.[3] (R. 742-44). Dr. Allen is a psychologist who prepared a report of a mental consultative examination that she performed at the request of the state Disability Determination Service. (R. 524-28).

The ALJ recognized each of these opinions, summarized them, and provided her explanation of the weight she accorded to them. (R. 160-63). First, she accorded little weight to Dr. Seery's opinion regarding Plaintiff's physical condition because it "was admittedly based on no objective findings, relying only on the claimant's verbal complaints," and because it contained "some apparent inconsistencies." (R. 160). She then discussed Plaintiff's mental impairments and the medical opinions related thereto, beginning with Dr. Allen's report:

---

[2]The date of this document is unclear. The day can be read as "25" or "26." (R. 681). The ALJ read it as "25," and that is a reasonable reading of the document. (R. 163) (noting this opinion was provided "one day earlier" than the Medical Source Assessment).

[3]Plaintiff makes no argument regarding the ALJ's RFC assessment as it relates to physical capabilities and limitations. Therefore, the court refers to this document only as it is relevant to the ALJ's evaluation of Dr. Seery's opinions regarding mental capabilities and limitations.

The claimant was . . . referred for a consultative examination with Molly Allen, Psy.D., in January 2013 to evaluate her mental complaints (Exhibit 4F). At that time, the claimant alleged a long history of depression and anxiety, with frequent crying spells, panic attacks, feeling overwhelmed, stress (after two break-ins), irritability, and anger (Exhibit 4F, p.l). Dr. Allen noted that the claimant appeared to have fair to poor insight and judgment into her condition.

During the exam, the claimant appeared to have been crying prior to the exam (Exhibit 4F, p.2). Nevertheless, she was well oriented, with no signs of thought disorder or psychosis (Exhibit 4F, p.2). She did appear anxious, "pumping" her leg during the exam, and she tended to perseverate on the losses and traumas she had experienced (Exhibit 4F, p.2). She was able to maintain intermittent eye contact despite her anxiety (Exhibit 4F, p.2).

The claimant appeared distracted at times during testing due to her feelings of distress (Exhibit 4F, p.3). She had some slight problems with calculations and relating her fund of general information (Exhibit 4F, p.3). In addition, she had some difficulty with an intermediate recall task (Exhibit 4F, p.3).

Due to her reported history of traumas, she was diagnosed with post traumatic stress disorder (PTSD), as well as possible personality disorder (Exhibit 4F, p.3). Dr. Allen then opined that the claimant would have difficulty with any job until she gets her emotional distress under control (Exhibit 4F, p.3). However, such an extreme emotional response is not indicated in her prior treatment notes. Moreover, despite her apparent distress, the deficits noted upon examination were rather limited, as discussed above. Thus, this aspect of Dr. Allen's opinion received little weight.

Dr. Allen then opined that the claimant is "usually" able to understand, remember, and carry out instructions, work at a reasonable pace, respond appropriately to supervision and co-workers, make simple work task decisions, and handle expectable pressures in a work setting (Exhibit 4F, p.3 ). This opinion received little weight. Dr. Allen indicated no limitation on the complexity of the instructions the claimant can perform. However, the exam findings indicate problems with calculations, problems recalling intermediate level tasks, and some weaknesses in other areas. Moreover, no social limitations were suggested, despite the claimant's obvious anxiety

> and the distractibility caused by her distress.  As a result, the undersigned does not find this opinion consistent with the record.

(R. 160-61).

The ALJ then summarized and evaluated Dr. Seery's opinions regarding mental capabilities and limitations. (R. 162-63).  She discounted his mental medical source assessment because "there is nothing in Dr. Seery's treatment notes to support such restrictions" (R. 162), because Dr. Allen's examination findings suggest fairly minimal limitations, and because Dr. Seery's opinion regarding physical limitations admittedly relied on Plaintiff's subjective complaints. Id. at 163.  Next, she discounted the opinion Dr. Seery provided one day earlier because it "contains vastly different limitations, including alleging no useful functioning in a large number of areas," and because many of its limitations are "contradicted by the claimant's own activities." Id.  She summarized her evaluation of Dr. Seery's opinions:  "Based on the lack of support in the record, Dr. Allen's exam findings, and the inconsistencies between these opinions, the undersigned gave Dr. Seery's opinions little weight." Id.

### C.    Analysis

Plaintiff does not address either Dr. Allen's opinion as a whole or the ALJ's consideration of it as a whole.  Rather, she focuses on two of the ALJ's bases for discounting part of the opinion, argues that those bases are not supported by the record, and concludes that the ALJ's determination to accord the opinion little weight was unjustified.  (Pl Brief 14-17).  First, she argues that the ALJ erred in finding that the

extreme emotional distress suggested by Dr. Allen's opinion (that Plaintiff cannot work until she gets some of her emotional distress under control) was not indicated in Plaintiff's earlier treatment notes. Id. at 14. Despite Plaintiff's argument to the contrary, the record supports the ALJ's finding. The court's review of the record reveals 10 medical notes in which comments were recorded regarding Plaintiff's constitution, mood, depression, or being overwhelmed and which are dated before Dr. Allen examined Plaintiff and reviewed the "authorization paperwork provided by Disability Determination Services" (R. 524).

The court noted two medical notes in this period reflecting depression, tearfulness, and being overwhelmed. The first note is a report of an independent medical examination prepared by Dr. Stein, a neurologist, on June 9, 2005. (R. 447-51). That note was a report of an independent medical examination performed by Dr. Stein who performed a record review in which he noted that Dr. Seery reported on January 12, 2005 that he had been treating Plaintiff "for depression since approximately July of 2004" (R. 450), and Dr. Stein reported on his physical examination that although Plaintiff was in no acute distress, and was cooperative, she "occasionally becomes tearful." (R. 448). At an office visit with Dr. Seery on November 1, 2011 it was reported that one of the reasons for Plaintiff's visit was "pain" and that she "[i]s tearful today because she has felt so bad for so long and is overwhelmed." (R. 478). Other than these two instances, Dr. Seery's records from Via Christi Family Medicine Center contain treatment notes of nine instances (including Dr. Seery's note from November 11, 2011) between January 14,

11

2011 and January 24, 2012 in which it is recorded that Plaintiff was "in no apparent distress." (R. 460, 463, 466, 469, 476, 479, 484, 487, 490). Moreover, in three of those instances, the records include a specific psychiatric note stating "[n]o unusual anxiety or evidence of depression." (R. 460, 484, 487).

The ALJ did not err in finding that Plaintiff's prior treatment notes did not indicate such an extreme response as suggested by Dr. Allen. Plaintiff also points to instances occurring <u>after</u> Dr. Allen's examination in which the medical records state that she was "emotional," "very tearful," "tearful and irritable," "very stressed and anxious," and "tearful for several weeks." (Pl. Br. 15) (citing R. 532, 617, 626, 628, 703). These instance are not contrary to the ALJ's finding regarding Plaintiff's <u>prior</u> treatment notes. Moreover, the court's review of the medical records reveals that their tenor is to the same effect both before and after Dr. Allen's examination. Finally, this argument seems to ask the court to reweigh the evidence and substitute its judgment for that of the ALJ, something it cannot do. <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

Next, Plaintiff argues that it was error for the ALJ to find that "the deficits noted upon [Dr. Allen's] examination were rather limited as discussed above." (R. 161). In her decision, the ALJ stated the deficits that Dr. Allen had noted: appearance of crying before the exam; "well oriented, with no signs of thought disorder or psychosis;" she appeared anxious, "pumping" her leg; a tendency to perseverate on her losses and trauma; able to maintain intermittent eye contact; appeared distracted at times due to feelings of distress; slight problems with calculations and relating her fund of general information;

12

and "some difficulty with an intermediate recall task." (R. 161). As the ALJ noted, these deficits seem rather limited especially in the tone and manner used by Dr. Allen in her report.

Plaintiff does not argue that these deficits are more severe than they appear or than the ALJ acknowledged them to be. Rather, she argues that it was wrong for the ALJ to rely "on Dr. Allen's psychological testing exclusively" (Pl. Br. 15), and that "evaluating Dr. Allen's opinion only against her examination [of Plaintiff] led the ALJ to an improper conclusion" because he failed to consider the combined effect of all of Plaintiff's impairments, and the cumulative impact of Plaintiff's pain and depression. Id. at 16-17. These arguments fail, first because the ALJ did not rely on Dr. Allen's psychological testing exclusively. Rather, as noted above she relied upon Plaintiff's prior treatment notes. And, she considered all of the medical records, medical opinions and Plaintiff's allegations of symptoms resulting from her impairments. (R. 150-63).

Plaintiff does not explain how it was that the ALJ failed to consider the combined effect of all of Plaintiff's impairments or the cumulative impact of Plaintiff's pain and depression. The ALJ noted several times that she had considered all of the record evidence and that she had considered Plaintiff's mental impairments singly and in combination. (R. 148, 153, 155, 156, 163). As noted above, the ALJ discussed and summarized the record evidence, and Plaintiff does not point to material, relevant evidence which the ALJ ignored. Moreover, Plaintiff does not discuss all of the bases given by the ALJ in her weighing of Dr. Allen's opinions. She argues in general terms

13

that the ALJ's evaluation of Dr. Allen's opinions is wrong, but she does not demonstrate specific error in that evaluation.

Having failed to demonstrate error in the evaluation of Dr. Allen's opinions, Plaintiff's argument that "substantial weight to Dr. Allen's opinion would support substantial weight to Dr. Seery's opinion" (Pl. Br. 17) must also fail.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 2nd day of June 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**